United States District Court
Middle District of Florida
Tampa Division

**JAMES L. DUCKWORTH, JR.,**

 *Plaintiff,*

v.                    No. 8:20-cv-1683-PDB

**ACTING COMMISSIONER OF SOCIAL SECURITY,**

 *Defendant.*

---

# Order

 James Duckworth, Jr., brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) to challenge a final decision by the Acting Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income. Doc. 1. The final decision is a decision by an administrative law judge (ALJ) signed on July 18, 2019. Tr. 21–31. The procedural history, record evidence, and law are summarized in the ALJ's decision, Tr. 23–30, and the parties' briefs, Docs. 26, 27, and not fully repeated here. Most of Duckworth's arguments concern the ALJ's assessment of his statements about his left-shoulder impairment. Doc. 26 at 14–18.

 A court's review of a decision by the Acting Commissioner is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3) (incorporating § 405(g)); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoted authority omitted). The "threshold for such evidentiary sufficiency is not high." *Id.*

Duckworth was in a car accident on May 24, 2017. Tr. 460. He alleges he became disabled on January 23, 2018. Tr. 210, 212. He underwent surgery on his left shoulder on March 20, 2019. Tr. 626–27.

The ALJ found Duckworth has severe impairments, including "impingement syndrome and rotator cuff tendonitis of the left shoulder status post-surgery." Tr. 24. The ALJ found Duckworth has the residual functional capacity (RFC) to perform "light work," Tr. 25, which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," 20 C.F.R. §§ 404.1567(b), 416.967(b). The ALJ found that Duckworth can frequently push and pull and reach in all directions with his "left upper extremity." Tr. 25. (The ALJ included additional limitations in the RFC, Tr. 25, irrelevant to the arguments Duckworth now raises.) Considering the RFC and other evidence, the ALJ found Duckworth can perform jobs that exist in significant numbers in the national economy and thus is not disabled. Tr. 30–31.

To determine disability, the Social Security Administration (SSA) considers symptoms, including pain, and the extent to which the symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). Statements about symptoms alone cannot establish disability. *Id.* §§ 404.1529(a), (b); 416.929(a), (b). Objective medical evidence from an acceptable medical source must show a medical impairment that "could reasonably be expected to produce" the

symptoms and, when considered with the other evidence, would lead to a finding of disability. *Id.* §§ 404.1529(a), (b); 416.929(a), (b).

The finding that an impairment could reasonably be expected to produce the symptoms does not involve a finding on the intensity, persistence, or functionally limiting effects of the symptoms. *Id.* §§ 404.1529(b), 416.929(b). For that finding, the SSA considers all available evidence, including medical history, medical signs, laboratory findings, and statements about how the symptoms affect the claimant. *Id.* §§ 404.1529(a), (c); 416.929(a), (c). The SSA then determines the extent to which the "alleged functional limitations and restrictions due to … symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how" the symptoms affect the ability to work. *Id.* §§ 404.1529(a), 416.929(a). Factors relevant to symptoms include daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication to alleviate the symptoms; treatment for the symptoms other than medication; and measures used to relieve the symptoms. *Id.* §§ 404.1529(c)(3), 416.929(c)(3).

To determine the extent to which symptoms affect a claimant's capacity to perform basic work activities, the SSA considers statements about the intensity, persistence, and limiting effects of the symptoms; the statements in relation to the objective medical and other evidence; any inconsistencies in the evidence; and any conflicts between the statements and other evidence, including history, signs, laboratory findings, and statements by others. *Id.* §§ 404.1529(c)(4), 416.929(c)(4).

An ALJ must clearly articulate explicit and adequate reasons for rejecting a claimant's testimony about symptoms. *Foote v. Chater*, 67 F.3d

3

1553, 1561–62 (11th Cir. 1995). A court will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

Here, the ALJ summarized Duckworth's testimony about his physical impairments:

> [Duckworth] testified that he has worked in construction as a welder but can no longer perform this work due to a combination of medical impairments. [Duckworth] stated that due to back and neck pain, he is limited in his ability to stand, sit and walk. [Duckworth] also testified that he suffers from shoulder pain.

Tr. 26.

The ALJ also summarized the medical evidence about Duckworth's physical impairments:

> The … claimant was involved in a car accident in May 2017 and presented to the emergency room complaining of head and back pain. (Exhibits 2F and 3F). On January 18, 2018, [Duckworth] underwent magnetic resonance imaging (MRI) of his left shoulder, which he stated was hurting since his accident. (Exhibit 4F). The MRI revealed a tendinosis of the rotator cuff with a mild partial tearing of the supraspinatus tendon as well as acromioclavicular joint hypertrophy and inflammation. (See also Exhibit 13F). On March 1, 2018, [Duckworth] presented to Patricia Mulder, ARNP, for treatment of shoulder and neck pain, and Nurse Mulder found that [Duckworth] had 5 of 5 motor strength in all muscle groups with tenderness and tautness in his cervical spine and left shoulder. (Exhibit 13F). [Duckworth] had a normal, non-antalgic gait and he was able to walk on his heels and toes. [Duckworth] was alert and oriented and did not appear anxious. Nurse Mulder diagnosed [Duckworth] with tendinosis of his left shoulder and opined that his prognosis was good with treatment. She then referred [Duckworth] for a surgical consult.
>
> On March 20, 2018, [Duckworth] presented to Michael Salvato M.D. and complained of low back pain radiating into his legs. (Exhibit 7F). Upon examination, Dr. Salvato noted that [Duckworth] had mild tenderness on palpation and some paraspinal muscle spasms. Dr. Salvato diagnosed

> [Duckworth] with lumbago and recommended that [Duckworth] undergo physical therapy. He also limited [Duckworth] to no heavy lifting or straining.
>
> [Duckworth] presented to Patricia Jamison, D.C. for chiropractic care in 2018 and was referred for conservative treatment only, consisting of spinal manipulation, stretching exercises and application of heat and cold. (Exhibit 14F). The most recent treatment notes from January 2019, shows that [Duckworth] reported that he is the caregiver for his elderly father. He also stated that he performs household chores albeit with pain. Dr. Jamison noted that [Duckworth] had a normal gait and normal muscle tone. He had only mild tenderness in his cervical spine with only mildly reduced range of motion. His shoulder impairment was somewhat more severe with complaints of chronic pain and some reduction in range of motion. Nevertheless. Dr. Jamison noted that [Duckworth] had only a 6% total body impairment due to his cervical degenerative disc disease and shoulder impingement.
>
> Treatment notes show that [Duckworth] continued to complain of shoulder pain. (Exhibit 16F). Then, on March 20, 2019, [Duckworth] underwent acromioplasty of his left shoulder joint. (Exhibit 17F). Thereafter, [Duckworth] reported that he was "improving every day." (Exhibit 18F). [Duckworth] was referred to physical therapy but it does not appear from the record that he complied with that medical recommendation. However, despite his failure to attend physical therapy, [Duckworth] reported on May 28, 2019, that he had no "significant pain" in his shoulder joint. (Exhibit 19F). [Duckworth] had "good range of motion" and [Duckworth] reported that he was engaging in strengthening exercises with weights at home. [Duckworth] was advised to continue with his exercises but advised to avoid any heavy overhead lifting.

Tr. 26–27.

The ALJ stated, "Upon review of the overall medical evidence of record, I find that [Duckworth] is not precluded from performing all work activity." Tr. 26. The ALJ continued, "After careful consideration of the evidence, I find that [Duckworth]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Duckworth]'s statements concerning the intensity, persistence and limiting effects of these symptoms

5

are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 27. The ALJ explained:

> As for [Duckworth]'s statements about the intensity, persistence, and limiting effects of his … symptoms, they are inconsistent because they are not supported by objective evidence. The record shows that [Duckworth] based his alleged onset date on the day he underwent magnetic resonance imaging showing some degenerative joint disease of his left shoulder joint. While I find that [Duckworth]'s shoulder impairment is severe, it did not preclude all work. Indeed, [Duckworth]'s chiropractor noted in an assessment … that [Duckworth] presented for inconsistent treatment of his shoulder and neck pain because work obligations occasionally took him "out of town." Moreover, diagnostic testing revealed somewhat mild clinical findings. Similarly, [Duckworth] presented for brief and inconsistent treatment of neck and low back pain. The record does not support the finding that [Duckworth] was precluded from all work by neck and low back pain. [Duckworth] had a 5 of 5 motor strength in all muscle groups, a normal gait, and nearly full range of motion in his back consistently throughout the period at issue. I also note that [Duckworth]'s shoulder surgery appeared to resolve his musculoskeletal complaints as [Duckworth] did not seek continued treatment after the surgery. … I also note that [Duckworth] is the caregiver for his elderly father and is able to perform household chores without significant difficulty. Thus, after careful consideration, I find that [Duckworth] is capable of performing a range of unskilled, light work. The medical evidence of record does not support a more restrictive [RFC].

Tr. 27–28 (discussion about mental impairments omitted).

The ALJ explained the weight he was giving opinions, including an opinion of Patricia Jamison, D.C.:

> I also considered the opinion of Patricia Jamison, D.C. who opined that [Duckworth] is limited to sedentary work with occasional postural limitations. (Exhibit 10F). She opined that [Duckworth] requires the option to change positions at will from sitting to standing throughout the workday and would likely miss about 2 days of work per month among other restrictions. However, Dr. Jamison noted that [Duckworth] had inconsistent treatment for … shoulder pain and neck pain due to work obligations that took him "out of town." I find this assessment only minimally persuasive. The record does not support the finding that

> [Duckworth] is limited to sedentary work or requires a sit stand option. A review of Dr. Jamison's own treatment notes show that [Duckworth] presented for conservative, infrequent treatment during the period at issue, which is not consistent with or supportive of the limitations she opined. Treatment notes from January 2019 show that [Duckworth] had only mild tightness and tenderness in his cervical spine. (Exhibit 14F). [Duckworth]'s left shoulder had pain with palpation and some reduction in range of motion but Dr. Jamison opined that [Duckworth] had only a 6% total body impairment. This finding is not consistent with limiting [Duckworth] to sedentary work. Moreover, [Duckworth] underwent surgery in March 2019 and thereafter reported significant improvement in his pain and functionality.

Tr. 28.

The ALJ explained the weight he was giving an opinion of Michael Anthony Salvato, M.D. Tr. 28. Dr. Salvato opined Duckworth should avoid heavy lifting or straining. Tr. 562. The ALJ found the opinion "persuasive as it is supported by objective evidence and consistent with the medical evidence of record showing that [Duckworth] experienced neck and shoulder pain during the period at issue, which caused limitations in his ability to lift and carry," and "consistent with the [RFC] limiting [Duckworth] to light work." Tr. 28–29.

The ALJ also explained the weight he was giving an opinion of Frederick McClimans, D.O. Tr. 29. After surgery, Dr. McClimans opined Duckworth should avoid heavy overhead lifting. Tr. 628, 630. The ALJ found the opinion "persuasive and consistent with the objective evidence in the record and the [RFC]." Tr. 29.

The ALJ also explained the weight he was giving an opinion of state agency consultant Neil Lewis-Levine, D.O. Tr. 29. Dr. Lewis-Levine opined Duckworth can perform light work. Tr. 91. The ALJ found the opinion supported by objective evidence showing Duckworth has "a normal gait, intact motor strength and somewhat mild diagnostic findings." Tr. 29. The ALJ

7

added, "I also note that [Duckworth]'s recent shoulder surgery appears to have resolved much of his musculoskeletal complaints and [Duckworth] was noted to be improving steadily." Tr. 29.

The ALJ concluded, "In sum, the above [RFC] assessment is supported by the medical evidence of record, [Duckworth]'s course of treatment, and his activities of daily living. After careful review, I find that [Duckworth] is capable of performing light, unskilled work as defined in the [RFC.]" Tr. 29.

Contrary to Duckworth's arguments, substantial evidence supports the ALJ's finding that objective evidence, treatment history, and Duckworth's activities of daily living support the RFC and no greater limitations. The substantial evidence includes March 2018 notes that Duckworth's left shoulder was taut and tender but his range of motion was normal and his motor strength in his upper extremities was full, Tr. 576; January 2019 notes that Duckworth felt pain but possessed normal muscle tone and bulk, Tr. 587–88; January 2019 notes that Duckworth's left shoulder was tender, had spasms, and had limited range of motion but appeared normal and had normal strength, Tr. 624; a May 2018 observation by Duckworth's chiropractor that he presented for inconsistent treatment because of work travel, Tr. 568; gaps in chiropractic treatment from February to October 2018, Tr. 617, 619; April 2019 notes that after surgery Duckworth was improving every day, Tr. 628; May 2019 notes that Duckworth's discomfort with extension and internal rotation motion was caused by the scar tissue and that he continued to improve, had no significant pain in his shoulder, had good range of motion, had reached maximum recommended improvement, should avoid only heavy overhead lifting, and should return only as needed, Tr. 630; and statements by Duckworth that he performs household activities despite some pain and cares for his elderly father

8

by cooking and cleaning for him, taking him to the doctor, and helping him with whatever he needs, Tr. 269, 587, 593.

Duckworth argues the evidence contradicts the ALJ's statement that surgery "appeared to[] resolve his musculoskeletal complaints as [he] did not seek continued treatment after surgery." Doc. 26 at 14–15 (quoting Tr. 27). For this argument, Duckworth relies on two post-surgery appointments with Dr. McClimans. Doc. 26 at 15.

At the first appointment, occurring twenty days after surgery, Dr. McClimans noted Duckworth's "condition is improving every day," and he feels pain moving his arm but not when resting his arm. Tr. 628. Dr. McClimans wrote he "had an allergic reaction [to] his laundry detergent and broke out in a rash all over his body. He took [Benadryl,] and the rash is clearing up now." Tr. 628. Dr. McClimans informed him he could discontinue using a shoulder immobilizer, gave him a prescription for physical therapy to strengthen his left shoulder and increase pain-free range of motion, and advised him to avoid any heavy overhead lifting "to prevent aggravating his condition." Tr. 628. Dr. McClimans advised him to return in three weeks to reassess his condition. Tr. 628.

At the second appointment, occurring seven weeks later (ten weeks after surgery), Dr. McClimans noted Duckworth's "shoulder is continuing to improve," he "has some soreness at the incision site but no significant pain," he "has been doing the home exercises and trying to use 2lb weights to build strength but the shoulder still feels weak," he "has tried some swimming," and he "has had a lot going on personally so he hasn't been able to do as much therapy as he would like." Tr. 630. Dr. McClimans informed him "he has good range of motion and the discomfort he is feeling with extension and internal

9

rotation motion is secondary to the scar tissue." Tr. 630. Dr. McClimans advised him "to continue with his exercises to improve his condition" and again "to avoid any heavy overhead lifting to prevent aggravating his condition." Tr. 630. Dr. McClimans opined Duckworth "has reached maximum medical improvement" and stated, "We will see [Duckworth] back in the clinic as needed." Tr. 630.

Duckworth's argument that the evidence contradicts the ALJ's statement is unpersuasive. Two post-op appointments evaluating healing and surgical results do not equate to continued treatment of his left-shoulder impairment.

Duckworth argues the ALJ erred by focusing on his left-shoulder impairment after the surgery while failing to account for the months between the onset date (January 23, 2018) and the surgery date (May 28, 2019). Doc. 26 at 15–17. For this argument, Duckworth relies on results of his MRI performed on January 18, 2018, showing "[t]endinosis of the rotator cuff with mild undersurface partial tearing of the supraspinatus tendon," "[p]osterior-inferior labral tear," "[s]ubacromial/subdeltoid bursitis," and "[a]cromioclavicular joint hypertrophy and inflammation," Tr. 420; medical records from visits on January 23, 2018, November 6, 2018, and November 27, 2018, showing he was referred to an orthopedic surgeon for evaluation and possible surgery, Tr. 460, 606, 613; medical records showing he visited a chiropractic office until January 8, 2019, when the office issued a final report of the car accident, Tr. 586–89; medical records showing Dr. McClimans saw him on January 28, 2019, and determined he needed surgery on his left shoulder, Tr. 623–24; and post-surgery medical records describing his pre-surgery impairment as "severe impingement syndrome," Tr. 626. Doc. 26 at

10

15–16. Contrary to Duckworth's argument, the ALJ considered evidence during the entire period, including before the surgery, as summarized above.

Duckworth argues the ALJ erred by basing his findings regarding his left-shoulder impairment "in large part" on evidence of facts predating the alleged onset date (January 23, 2018). Doc. 26 at 17–18. For this argument, Duckworth relies on the ALJ's references to a doctor's statement during a visit on May 30, 2018, that Duckworth had inconsistent treatment because of work obligations that took him out of town (Tr. 28). Doc. 26 at 17; *see also* Tr. 568 (doctor's statement). Duckworth acknowledges the doctor made the statement but contends "the overwhelming bulk of the treatment to that point was beginning May 30, 2017 and continuing through January 23, 2018." Doc. 26 at 17 (citing Tr. 446–49, 451–52, 457–59, 471–74). He states, "It is likely that Mr. Duckworth continuing to attempt work may have aggravated his shoulder injury. Whether it did or not, though, the evidence is clear that shortly after his shoulder MRI, he stopped working and was unable to go back to work at any time through the date of the decision. The fact that he tried to work before finally deciding he could not is irrelevant to his condition during the period determined by the ALJ's decision." Doc. 26 at 18. Contrary to Duckworth's argument, the ALJ considered evidence after the alleged onset date, as summarized above, and not primarily before the alleged onset date.

Apart from his left-shoulder impairment, Duckworth argues the ALJ erred in failing to consider his strong work history. Doc. 26 at 18. According to him, "A consistent good work history supports the credibility of a claimant." Doc. 26 at 18. The Acting Commissioner responds that although Duckworth's earning records show he worked each year since age 18, his earnings are inconsistent with full-time employment, observing he earned only $471 in

2003; $2,640 in 2009; and between $11,000 and $13,000 in 2008, 2010, and 2014. Doc. 27 at 7; *see also* Tr. 228 (earnings summary). According to the Acting Commissioner, Duckworth's "work history does not present compelling evidence in support of his subjective complaints" and, regardless, "the ALJ would not have erred by not crediting [his] subjective complaint based upon that history." Doc. 27 at 7–8.

The SSA has removed "credibility" from policy because the regulations do not use that term and the "subjective symptom evaluation is not an examination of an individual's character." Social Security Ruling 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017) (republished). Accordingly, the Court construes Duckworth's argument as an argument that an ALJ errs by failing to state consideration of strong work history when evaluating a claimant's subjective symptoms. No statute, regulation, or binding case law supports the argument. The law requires a clearly articulated finding supported by substantial evidence, *Foote*, 67 F.3d at 1561–62; *Mitchell*, 771 F.3d at 782, which the ALJ provided.

The Court **affirms** the Acting Commissioner's decision and **directs** the clerk to enter judgment for the Acting Commissioner and against James Duckworth, Jr., and close the case.

**Ordered** in Jacksonville, Florida, on March 30, 2022.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*